| UNITED STATES BANKRUPTCY COURT<br>District of Alaska | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>Miller Energy Resources, Inc. | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br><br>Miller Petroleum, Inc. | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>8629 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>1001 Louisiana, Ste. 3100<br>Houston, TX<br>ZIP CODE 77002 | Street Address of Joint Debtor (No. and Street, City, and State):<br><br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>Harris | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>See Schedule 1 attached. | ZIP CODE |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☑ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other | ☐ Chapter 7<br>☐ Chapter 9<br>☑ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |

| Chapter 15 Debtors<br>Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: | Tax-Exempt Entity<br>(Check box, if applicable.)<br><br>☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box.)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☑ Debts are primarily business debts. |
|---|---|---|

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☑ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☑ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐<br>1-49 | ☐<br>50-99 | ☐<br>100-199 | ☑<br>200-999 | ☐<br>1,000-5,000 | ☐<br>5,001-10,000 | ☐<br>10,001-25,000 | ☐<br>25,001-50,000 | ☐<br>50,001-100,000 | ☐<br>Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☑<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☑<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B1 (Official Form 1) (04/13)                                                                                               Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>Miller Energy Resources, Inc. |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A**<br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br><br>☑ Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual<br>whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.  I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>   Signature of Attorney for Debtor(s)     (Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No.

---

**Exhibit D**

(To be completed by every individual debtor.  If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

---

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☐ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☑ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

---

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence.  (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1) (04/13) — Page 3

| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | **Name of Debtor(s):**<br>Miller Energy Resources, Inc. |
|---|---|

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br><br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br><br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Debtor<br><br>X _____<br>Signature of Joint Debtor<br><br>_____<br>Telephone Number (if not represented by attorney)<br><br>_____<br>Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only **one** box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>(Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative)<br><br>_____<br>Date |
| **Signature of Attorney\***<br><br>X _____<br>Signature of Attorney for Debtor(s)<br>Timothy A. ("Tad") Davidson II<br>Printed Name of Attorney for Debtor(s)<br>Andrews Kurth LLP<br>Firm Name<br>600 Travis, Suite 4200<br>Houston, TX 77002<br>Address<br>(713) 220-3810<br>Telephone Number<br>10/01/2015<br>Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | **Signature of Non-Attorney Bankruptcy Petition Preparer**<br><br>I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>_____<br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |
| **Signature of Debtor (Corporation/Partnership)**<br><br>I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Authorized Individual<br>Carl F. Giesler, Jr.<br>Printed Name of Authorized Individual<br>Chief Executive Officer<br>Title of Authorized Individual<br>10/01/2015<br>Date | _____<br>Address<br><br>X _____<br>Signature<br><br>_____<br>Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Miller Energy Resources, Inc., *et al.*;[1] | § | Joint Administration Requested |
| | § | |
| Debtors. | § | Case No.: |

### EXHIBIT "A" TO VOLUNTARY PETITION

1. The securities of Miller Energy Resources, Inc. ("MER") identified below are registered under section 12 of the Securities and Exchange Act of 1934.  The SEC file number is 001-34732.

2. The following financial data, which is consolidated among MER and certain of its subsidiaries which are also debtors in these chapter 11 cases, is the latest available information and refers to MER and its debtor-subsidiaries' condition as of the dates set forth below.

    a. Total assets:[2]    $392,559,000

    b. Total liabilities:[2]    $336,910,000

    c. Debt securities held by more than 500 holders:  NONE[3]

    d. As of September 29, 2015, MER had three series of preferred stock issued and outstanding:

        i. 25,750 shares of 12% Series B Preferred Stock, with a redemption value of $100.00 per share;

        ii. 3,250,000 shares of 10.75% Series C Cumulative Redeemable Preferred Stock, with a redemption value of $25.00 per share;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cook Inlet Energy, LLC, an Alaska limited liability company (6643); Miller Energy Resources, Inc., a Tennessee corporation (8629); Miller Drilling, TN LLC, a Tennessee limited liability company (8891); Miller Energy Services, LLC, a Delaware limited liability company (8670); Miller Energy GP, LLC, a Delaware limited liability company (0999); Miller Rig & Equipment, LLC, a Delaware limited liability company (8727); East Tennessee Consultants, Inc., a Tennessee corporation (3108); East Tennessee Consultants II, L.L.C., a Tennessee limited liability company (0107); Anchor Point Energy, LLC, an Alaskan limited liability company (7946); Savant Alaska, LLC, a Colorado limited liability company (0579); and Nutaaq Operating LLC, an Alaska limited liability company (2908).

[2] As of January 31, 2015 as reported in the March 12, 2015 10-Q quarterly report (Unaudited).

[3] As of July 15, 2014 as reported in the July 15, 2014 10-K annual report.

     iii. 3,499,723 shares of 10.5% Series D Fixed Rate/Floating Rate Cumulative Redeemable Preferred Stock (the "Series D. Preferred Stock"), with a redemption value of $25.00 per share.  Miller is authorized to issue 4,000,000 shares of Series D Preferred Stock.

   e.  As of September 29, 2015, MER had issued and outstanding 46,673,223 shares of common stock.[4]

3.  Brief description of MER's business:

The Debtors are an oil and natural gas production company focused on Alaska.  The Debtors have a substantial acreage, reserve and resource position in Alaska and significant midstream and rig infrastructure to support production in the Cook Inlet and North Slope of Alaska.

4.  List of the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of MER based on the latest date such persons have filed reports of beneficial ownership with the SEC:

| TITLE OF CLASS OF STOCK | NAME OF BENEFICIAL OWNER | AMOUNT AND NATURE OF BENEFICIAL OWNERSHIP | PERCENTAGE OF COMMON STOCK |
|---|---|---|---|
| Common Stock | River Road Asset Management, LLC (1) | 3,463,742 | 7.5% |
| Common Stock | Aviva Investors North America Holdings, Inc. (2)(3) | 4,078,405 | 9.2% |
| Common Stock | Aviva Investors Holdings Limited (2)(3) | 4,078,405 | 9.2% |
| Common Stock | Aviva Group Holdings Limited (2)(3) | 4,078,405 | 9.2% |
| Common Stock | Aviva PLC (2)(3) | 4,078,405 | 9.2% |
| Common Stock | Scott M. Boruff (4) | 2,869,728 | 6.2% |

(1) Information was obtained from Schedule 13D filed by the beneficial owners on October 15, 2014.   The business address of River Road Asset Management, LLC is 462 South Fourth Street, Suite 1600, Louisville, KY 40202.

(2) Information was obtained from Schedule 13D filed by the beneficial owners on February 27, 2014.   The business addresses of each are: Aviva Investors North America Holdings, Inc.,  225

---

[4] MER's common stock is publically-traded and was listed and traded on the New York Stock Exchange under the ticker symbol "MILL" through the end of July 2015.

West Wacker, Suite 1750, Chicago, IL 60606; Aviva Investors Holdings Limited, No. 1 Poultry, London EC2R 8EJ; and for both Aviva Group Holdings Limited and Aviva PLC, St. Helen's, 1 Undershaft, London EC3P 3DQ.

(3) Aviva Investors North America Holdings, Inc. is 100% owner of River Road Asset Management, LLC. Aviva Investors Holdings Limited is 100% owner of Aviva Investors North America Holdings, Inc. Aviva Group Holdings Limited is 100% owner of Aviva Investors Holdings Limited. Aviva PLC is 100% owner of Aviva Group Holdings Limited.

(4) Information was obtained from Section 16, Form 4 filed by the beneficial owner on 12/09/2014.  Mr. Boruff's address is 9721 Cogdill Road, Suite 302, Knoxville, TN 37932.  At the time of the report, Mr. Boruff was Director and Executive Chairman.  The percentage was calculated as follows:  2,869,728 shares divided by 46,673,223 shares outstanding as of September 29, 2015, equals 6.2%.

## SCHEDULE 1 TO VOLUNTARY PETITION
## <u>MILLER ENERGY RESOURCES, INC.</u>

A.  The debtor's estimated number of creditors, estimated assets, and estimated liabilities are listed on a consolidated basis based upon the unaudited consolidated balance sheets of the Debtors (as defined below) as of January 31, 2015.

B.  All Other Names Used by the Debtor in the last 8 years (including trade names):

> Miller Petroleum, Inc.

C.  Locations of Principal Assets of Business of Debtors (on a consolidated basis):

> Municipality of Anchorage, Alaska and other locations throughout the State of Alaska;
> Harris County, Texas;
> Knox County, Tennessee;
> Scott County, Tennessee; and
> Morgan County, Tennessee

D.  Pending Bankruptcy Cases Filed by Affiliates of the Debtor:

> On the date hereof, each of the affiliated entities listed below, including the debtor in this chapter 11 case (collectively, the "Debtors"), filed a petition in this Court for relief under chapter 11 of title 11 of the United States Code.  Contemporaneously with the filing of their petitions, the Debtors filed a motion requesting that the Court consolidate their chapter 11 cases for administrative purposes only.

> 1.  Miller Energy Resources, Inc.;
> 2.  Miller Drilling, TN LLC;
> 3.  Miller Energy Services, LLC;
> 4.  Miller Energy GP, LLC;
> 5.  Miller Rig & Equipment, LLC;
> 6.  Cook Inlet Energy, LLC;[1]
> 7.  East Tennessee Consultants, Inc.;
> 8.  East Tennessee Consultants II, L.L.C.;
> 9.  Anchor Point Energy, LLC;
> 10. Savant Alaska, LLC; and
> 11. Nutaaq Operating LLC.

---

[1] On August 6, 2015, an involuntary petition was filed against Cook Inlet Energy, LLC, Case No. 15-00236, in the United States Bankruptcy Court for the District of Alaska (Judge Spraker).

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Miller Energy Resources, Inc., *et al.*, | § | Joint Administration Requested |
| | § | |
| Debtors. | § | Case No.: |

**CONSOLIDATED LIST OF CREDITORS**
**HOLDING 30 LARGEST UNSECURED CLAIMS**

Following is a consolidated list of unsecured creditors holding the 30 largest unsecured claims against (i) Miller Energy Resources, Inc.; (ii) Miller Drilling, TN LLC; (iii) Miller Energy Services, LLC; (iv) Miller Energy GP, LLC; (v) Miller Rig & Equipment, LLC; (vi) Cook Inlet Energy, LLC; (vii) East Tennessee Consultants, Inc.; (viii) East Tennessee Consultants II, L.L.C.; (ix) Anchor Point Energy, LLC; (x) Savant Alaska, LLC; and (xi) Nutaaq Operating LLC. (collectively, the "Debtors"), as of approximately October 1, 2015. The list has been prepared on a consolidated basis, based upon the current records of the Debtors that have contemporaneously commenced chapter 11 cases in this Court.  Related entities may be listed in a consolidated basis on this chart. In setting forth the approximate amount of each claim, the Debtors may have used estimates for market values for securities and currencies and related company offsets. Certain accuracy, and values listed herein may vary substantially from fair value.

The Debtors have not yet identified which of the 30 largest unsecured creditors, if any, are contingent, unliquidated, disputed and/or subject to setoff. The Debtors reserve all rights with respect to the creditors listed on this schedule, including the right to identify any of them as contingent, unliquidated, disputed and/or subject to setoff, as appropriate.  The amounts are based on the Debtors' records at the time this schedule was filed. The Debtors may continue to reconcile the amount on this schedule, and accordingly, neither the Debtors nor their professionals can guaranty that such numbers are accurate at this time. The information presented in this list shall not constitute an admission by, nor is it binding on, the Debtors.

The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101 or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 30 largest unsecured claims.

| Rank | Name of Creditor | Name, Telephone Number and Complete Mailing Address Including Zip Code of Employee, Agent, or department of Creditor Familiar with Claim Who May Be Contacted | Nature of Claim (Trade Debt, Bank Loan, Government Contract, etc.) | Indicate if Claim is Contingent, Unliquidated, Disputed, or Subject to Setoff | Amount of Claim |
|---|---|---|---|---|---|
| 1 | Cudd Pressure Controls, Inc. | Cudd Pressure Control Inc. PO Box 910283 Dallas, TX 75391 | Trade Debt | Disputed | $1,888,766 |
| 2 | Baker Hughes Business Support Services | Baker Hughes Business Support Services P.O. Box 301057 Dallas, TX 75303 | Trade Debt | | $1,550,541 |
| 3 | Cruz Construction, Inc. | Cruz Construction, Inc. 7000 East Palmer-Wasilla Hwy Palmer, AK 99645 | Trade Debt | Disputed | $1,098,266 |
| 4 | Inlet Drilling Alaska Inc. | Inlet Drilling Alaska Inc. 210 North Willow Street Kenai, AK 99611 | Trade Debt | | $949,013 |
| 5 | Schlumberger Technology Corp. | Schlumberger Technology Corp. P.O. Box 201556 Houston, TX 77216 | Trade Debt | | $745,641 |
| 6 | ExxonMobil Oil Corporation | ExxonMobil Corporation P.O. Box 951449 Dallas, TX 75395-1449 | Trade Debt | | $625,933 |
| 7 | AIX Energy | AIX Energy 2441 High Timbers Drive Suite 120 The Woodlands, TX 77380 | Trade Debt | | $600,000 |

| 8 | DLA Piper LLP US | DLA Piper LLP US P.O. Box 75190 Baltimore, MD 21275 | Trade Debt | | $552,744 |
|---|---|---|---|---|---|
| 9 | Vetco Gray, Inc. | Vetco Gray, Inc. PO Box 841017 Dallas, TX 75284 | Trade Debt | | $511,310 |
| 10 | Alaska West Express | Alaska West Express P.O. Box 34026 Seattle, WA 98124 | Trade Debt | | $508,896 |
| 11 | Patterson-UTI Drilling Company LLC | Patterson-UTI Drilling Company LLC 1660 Wynkoop St. Denver, CO 80202 | Trade Debt | | $491,259 |
| 12 | M-I LLC | M-I LLC P.O. Box 732135 Dallas, TX 75373 | Trade Debt | | $486,430 |
| 13 | KPMG LLP | KPMG LLP Dept. 0608 P.O. Box 12001 Dallas, TX 75312-0608 | Trade Debt | | $448,000 |
| 14 | National Oilwell Varco L.P. | National Oilwell Varco L.P. P.O. Box 201202 Dallas, TX 75320 | Trade Debt | | $443,360 |
| 15 | DNOW, LP | DNOW, LP P.O. Box 200822 Dallas, TX 75320 | Trade Debt | | $411,478 |
| 16 | ASRC Energy Services | ASRC Energy Services Project 5145 PO Box 241562 Anchorage, AK 99524-1562 | Trade Debt | | $398,798 |
| 17 | Cruz Marine, LLC | Cruz Construction, Inc. 7000 East Palmer-Wasilla Hwy Palmer, AK 99645 | Trade Debt | | $372,562 |

| 18 | Tubular Solutions Alaska, Inc. | Tubular Solutions Alaska, Inc. 310 K Street, Suite #402 Anchorage, AK 99501 | Trade Debt | | $350,737 |
|----|---|---|---|---|---|
| 19 | Vinson & Elkins LLP | Vinson & Elkins LLP 1001 Fannin Street Suite 2500 Houston, TX 77002 | Trade Debt | | $329,376 |
| 20 | Halliburton Energy Services, Inc. | Halliburton Energy Services, Inc. P.O. Box 301341 Dallas, TX 75303 | Trade Debt | | $317,027 |
| 21 | Udelhoven Oilfield System Services, Inc. | Udelhoven Oilfield System Services, Inc. 184 E. 53rd Avenue Anchorage, AK 99518 | Trade Debt | | $310,992 |
| 22 | Production Testing Services, Inc. | Production Testing Services, Inc. 6911 Signal Dr. Houston, TX 77041-2718 | Trade Debt | | $292,001 |
| 23 | Carol L. Inman | Carol L. Inman P.O. Box 50 Anchor Point, AK 99556 | Trade Debt | | $288,395 |
| 24 | All American Oilfield Associates LLC | All American Oilfield Associates LLC 14896 Kenai Spur Hwy, Ste. 203 Kenai, AK 99611 | Trade Debt | | $276,781 |
| 25 | Weatherford U.S., Holdings, LLC | Weatherford U.S., Holdings, LLC P.O. Box 301003 Dallas, TX 75303-1003 | Trade Debt | | $257,351 |
| 26 | Pollard Wireline Inc. | Pollard Wireline Inc. P.O. Box 1360 Kenai, AK 99611 | Trade Debt | | $256,352 |
| 27 | National Oilwell DHT, L.P. | National Oilwell DHT, L.P. P.O. Box 201224 Dallas, TX 75320 | Trade Debt | | $203,315 |

| 28 | Simpson Thacher & Bartlett LLP | Simpson Thacher & Bartlett LLP 425 Lexington Avenue New York, NY 10017 | Trade Debt | | $200,107 |
|---|---|---|---|---|---|
| 29 | Quest Integrity USA, LLC | Quest Integrity USA, LLC PO Box 847778 Dallas TX 75284 | Trade Debt | | $171,900 |
| 30 | Korn/Ferry International | Korn/Ferry International PO Box 1450 Minneapolis, MN 55485 | Trade Debt | | $157,936 |

## DECLARATION REGARDING CONSOLIDATED LIST OF
## <u>CREDITORS HOLDING 30 LARGEST UNSECURED CLAIMS</u>

I, Carl F. Giesler, Jr., Chief Executive Officer of Miller Energy Resources, Inc., declare under penalty of perjury that I have reviewed the foregoing "Consolidated List of Creditors Holding 30 Largest Unsecured Claims" and that it is true and correct to the best of my knowledge, information, and belief.

Date: October 1, 2015                      By:    _____

Carl F. Giesler, Jr.
Chief Executive Officer
Miller Energy Resources, Inc.


*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

HOU:3550577.6

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Miller Energy Resources, Inc., *et al.*, | § | Joint Administration Requested |
| | § | |
| Debtors. | § | Case No.: |

## STATEMENT OF CORPORATE OWNERSHIP

In accordance with Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 1007-1, Miller Energy Resources, Inc. (the "Company"), hereby states that no entity directly or indirectly owns 10% or more of any class of the Company's equity interests.

The Company owns 100% of (i) Miller Drilling, TN LLC; (ii) Miller Energy Services, LLC; (iii) Miller Energy GP, LLC; (iv) Miller Rig & Equipment, LLC; (v) Cook Inlet Energy, LLC; (vi) East Tennessee Consultants, Inc.; (vii) East Tennessee Consultants II, L.L.C.; and (viii) Savant Alaska, LLC.

Cook Inlet Energy, LLC, one of the above-mentioned, wholly-owned subsidiaries of the Company, currently owns 100% of Anchor Point Energy, LLC. Savant Alaska, LLC, another of the above-mentioned, wholly-owned subsidiaries of the Company, currently owns 100% of Nutaaq Operating LLC.

The Company does not own an interest in any general partnership. The Company does not own an interest in any limited liability partnership.

I, Carl F. Giesler, Jr., Chief Executive Officer of Miller Energy Resources, Inc., declare under penalty of perjury that I have reviewed the foregoing "Corporate Ownership Statement" and that it is true and correct to the best of my knowledge, information, and belief, with reliance on appropriate corporate officers.

Date: October 1, 2015        By:   _____
                                   Carl F. Giesler, Jr.
                                   Chief Executive Officer
                                   Miller Energy Resources, Inc.

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

## RESOLUTIONS OF THE BOARD OF DIRECTORS OF
## MILLER ENERGY RESOURCES, INC.

### September 30, 2015

### Chapter 11 Filings

WHEREAS, the Board of Directors of Miller Energy Resources, Inc. ("Company"), a Tennessee corporation, acting on behalf of the Company in the Company's individual capacity and in the Company's capacity as the ultimate parent of subsidiary (the "Subsidiaries") listed herein has deemed it advisable and in the best interests of the Company and its Subsidiaries, which include (i) Miller Drilling, TN LLC, a Tennessee limited liability company; (ii) Miller Energy Services, LLC, a Delaware limited liability company; (iii) Miller Energy GP, LLC, a Delaware limited liability company; (iv) Miller Rig & Equipment, LLC, a Delaware limited liability company; (v) Cook Inlet Energy, LLC, an Alaska limited liability company; (vi) East Tennessee Consultants, Inc., a Tennessee corporation; (vii) East Tennessee Consultants II, L.L.C., a Tennessee limited liability company; (viii) Anchor Point Energy, LLC, an Alaska limited liability company; (ix) Savant Alaska, LLC, a Colorado limited liability company; and (x) Nutaaq Operating, LLC, an Alaska limited liability company and their respective creditors, shareholders and employees, that the Company and each of the Subsidiaries file petitions seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

NOW, THEREFORE, BE IT RESOLVED, as follows:

RESOLVED, that the law firm of Andrews Kurth LLP be engaged as bankruptcy counsel for the Company, under a general retainer, in the Chapter 11 Case (the "Chapter 11 Case"), subject to any requisite bankruptcy court approval; and further

RESOLVED, that the investment bank and financial advisory firm of Seaport Global Securities be engaged as transaction and restructuring advisors for the Company in the Chapter 11 Case, subject to any requisite bankruptcy court approval; and further

RESOLVED, that each of the Company's Chief Executive Officer and Chief Financial Officer (each an "Authorized Officer") be, and hereby is, authorized and empowered, for and in the name and on behalf of the Company, to engage and employ, or cause the Company to engage and employ, a claims, balloting, and notice agent of the Authorized Officer's choice for the Company in the Chapter 11 Case, subject to any requisite bankruptcy court approval; and further

RESOLVED, that the Board of Directors of the Company hereby ratifies and affirms the appointment on and prior to the date of this resolution by the duly appointed officers of the Company of such law firms, consultants or companies, as have been necessary and appropriate to act as ordinary course, special and/or conflicts counsel for the Company, under a general retainer, to assist the Company in the Chapter 11 Case and to perform other tasks related to the Company's Chapter 11 Case; and further

RESOLVED, that, unless and until the Restructuring Committee (defined below) shall elect to modify this grant of authority, the Authorized Officers, and any employees or agents (including counsel) designated by or directed by the Authorized Officers, be, and hereby are, authorized and empowered, for and in the name of and behalf of the Company, to execute, verify, and file all petitions, schedules, motions, lists, applications, pleadings and other papers, and in that connection, to employ and retain all assistance by legal counsel, accountants, financial advisors and other professionals which have been retained by the Company as of the date of this resolution or as may be approved by the Restructuring Committee from time to time, and to perform any and all further acts and deeds such Authorized Officer deems necessary, proper or desirable in connection with the Chapter 11 Case with a view to the successful prosecution of the Chapter 11 Case; and further

RESOLVED, that unless and until the Restructuring Committee shall elect to modify this grant of authority, in connection with the commencement of the Chapter 11 Case by the Company, the Authorized Officers be, and hereby are authorized and empowered for and in the name and on behalf of the Company, to negotiate, execute and deliver a cash collateral stipulation on the terms and conditions such Authorized Officer considers necessary, proper or desirable, such determination to be conclusively evidenced by such execution or the taking of such action, and to consummate the transactions contemplated by such agreements or instruments for and in the name and on behalf on behalf of the Company; and further

RESOLVED, that, in the judgment of the Board of Directors of the Company (the "Board"), acting on behalf of the Company, it is desirable and is in the best interests of the Company and the interests of the Company's creditors, shareholders and employees, and other interested parties, that an Authorized Officer files a petition for and in the name and on behalf of the Company and each Subsidiary seeking relief under the provisions of Chapter 11 of the Bankruptcy Code, and further,

RESOLVED, the Authorized Officers, and any employees or agents (including counsel) designated by or directed by the Authorized Officers, be, and they hereby are authorized and empowered, for and in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and record, and perform, such agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities, certifications or other documents, institute adversary proceedings, and to take such other actions, as in the judgment of such officer shall be or become necessary, proper and desirable in connection with the filing of the Chapter 11 Case, including without limitation the filing of emergency motions in connection with the commencement of the Chapter 11 Case necessary, proper or desirable in administering the Chapter 11 Case and allowing for the Company to continue to operate during its pendency, including motions related to (i) case procedures, (ii) joint administration of the Chapter 11 Case, (iii) extensions of the deadlines in which to file schedules, statements of financial affairs and lists of equity holders, (iv) obtaining permission to file a consolidated creditors matric and implement certain notice procedures, (v) providing adequate assurance of utility payments, (vi) providing for the payment of insurance premiums, (vii) allowing for the payment of royalties, (viii) allowing for the payment of non-royalty lease obligations, (ix) allowing for the continued payment of wages

and provision of benefits to employees, (x) allowing for the maintenance of the Company's and the Subsidiaries existing bank accounts, (xi) entering into the DIP Agreement (defined below) and the use of cash collateral (xii) retaining the services of Andrews Kurth, David H. Bundy, Seaport Global Securities and an official claims, noticing and ballot clerk during the Chapter 11 Case.

## Debtor-in-Possession Financing

WHEREAS, the Company proposes to enter into a debtor-in-possession credit agreement (the "DIP Agreement") by and among the Company, as borrower, certain Subsidiaries, as guarantors, Apollo Investment Corporation, as administrative agent ("Agent"), and other lenders named therein, as lenders (the "DIP Lenders"), consistent with the terms set forth in term sheet (the "DIP Term Sheet") negotiated by the Company with the Agent and DIP Lenders; and

WHEREAS, the DIP Agreement will provide the Company a senior secured super-priority debtor-in-possession revolving credit facility that would permit borrowings of not more than $20 million outstanding at any one time (the "Financing"); and

WHEREAS, the Company, as borrower, desires to obtain the Financing to fund (a) general working capital and operating costs and expenses (including, without limitation, the costs of administering the Chapter 11 Cases of the Company and Subsidiaries) of the Company and Subsidiaries, (b) fees of professional advisors to the Company and Subsidiaries, and (c) all fees charged by the Agent and DIP Lenders (the "DIP Fees") in connection with the Financing, subject to the all conditions to be set forth in the DIP Agreement, and subject to approval by the bankruptcy court; and

WHEREAS, in connection with the Financing and pursuant to the DIP Agreement, the Company's Subsidiaries may be required to enter into a guaranty (the "Guaranty") in favor of the Agent (for the benefit of the Secured Parties, as defined therein), to guarantee all the indebtedness under the DIP Agreement; and

WHEREAS, in connection with the Financing, the Company and one or more Subsidiaries (as applicable) may be required to pledge and grant a first priority lien and security interest to Agent (on behalf of the Secured Parties, as defined therein) in certain of their respective assets, including without limitation cash, cash equivalents, accounts, deposit accounts, inventory, equipment, general intangibles, certain investment property, equity interests in the Subsidiaries, fixtures, guaranties, swap contract payments, insurance benefits, and warranties (the "Collateral"), pursuant to the terms and conditions of the Financing Documents (as defined below); and

WHEREAS, the Board, acting on behalf of the Company, deems it advisable and in the best interests of the Company and each Subsidiary and the interests of the Company's and each Subsidiary's creditors, shareholders and employees, and other interested parties (as applicable) to (a) enter into the DIP Term Sheet and, on the terms specified in such DIP Term Sheet, the DIP Agreement, the related Guaranties and additional financing and other

agreements constituting exhibits to the DIP Agreement in which each is named as a party, and certain other agreements, documents, guaranties, promissory notes, certificates, control agreements, security agreements, pledge agreements, instruments of pledge, assignments, assignments of earnings, assignments of insurance, financing statements, designations, transfers, endorsements, and related instruments and documents (collectively with the DIP Agreement, Guaranties and such other agreements and certificates, instruments and other documents, the "Financing Documents"), (b) effect the Financing and other transactions contemplated thereby, and (c) until such time as the Restructuring Committee shall modify this grant of authority, authorize the Authorized Officers to take any and all action as such Authorized Officer may deem appropriate to effect and carry out the Financing and any other transactions contemplated by the DIP Agreement and the other Financing Documents to which the Company and any Subsidiary is a party, subject to approval by the bankruptcy court;

NOW THEREFORE, BE IT RESOLVED, that the Financing, and any transactions contemplated thereby, effected pursuant to the terms of the DIP Agreement and the other Financing Documents, to the extent not materially inconsistent with the DIP Term Sheet, are hereby in all respects approved, adopted, ratified and confirmed; and further

RESOLVED, that until such time as the Restructuring Committee shall modify this grant of authority, the Authorized Officers be, and hereby are, authorized and empowered, for and in the name and on behalf of the Company and without the joinder of any other person or entity, to effect the Financing, and any transactions contemplated thereby (including the pledge of collateral), to the extent not materially inconsistent with the DIP Term Sheet, pursuant to the DIP Agreement and the other Financing Documents; and further

RESOLVED, that, until such time as the Restructuring Committee shall modify this grant of authority, the Authorized Officers be, and hereby are, authorized and empowered, for and in the name and on behalf of the Company and without the joinder of any other person or entity, to pledge, grant a security interest in and lien upon and assign, endorse, negotiate, deliver, or otherwise hypothecate or transfer to Agent, any and all Collateral now or hereafter held, owned, or controlled by the Company and any Subsidiary, and to perfect such security interests, in each case pursuant to the terms and conditions of the DIP Agreement and other Financing Documents; and further

RESOLVED, that the form, terms and provisions of the DIP Term Sheet, and the performance by the Company and each Subsidiary of its obligations under the DIP Agreement and the other Financing Documents, to the extent not materially inconsistent with the DIP Term Sheet, are hereby in all respects approved, adopted, ratified, and confirmed; and further

RESOLVED, that until such time as the Restructuring Committee shall modify this grant of authority, the Authorized Officers be, and hereby are, authorized and empowered, for and in the name and on behalf of the Company and without the joinder of any other person or entity, to negotiate, execute and deliver to the appropriate parties the DIP

Agreement and the other Financing Documents, to the extent not materially inconsistent with the DIP Term Sheet, with such changes therein or additions thereto as the Authorized Officer executing the same shall approve, the execution and delivery of such agreements by such officer to be conclusive evidence of the approval of the Board thereof and all matters relating thereto; and further

RESOLVED, that the Board, acting on behalf of the Company acting in the exercise of its business judgment, has found that it is desirable and in the best interests of the Company and each Subsidiary and the interests of the Company's and each Subsidiary's creditors, shareholders and employees, and other interested parties, that the Company and each Subsidiary enters into and performs their obligations under the DIP Agreement and the other Financing Documents to which any of them is a party and any documents or agreement contemplated thereby to the extent consistent with the terms of the DIP Term Sheet.

## Plan Term Sheet

WHEREAS the Company proposes to enter into a Plan Term Sheet (the "Term Sheet") by and among the Company, the Subsidiaries, Apollo Investment Corporation, as administrative agent, and the lender parties thereto to consummate a comprehensive restructuring transaction involving substantially all of the Company's and its Subsidiaries' assets through a plan of reorganization to be filed by the Company and Subsidiaries;

NOW THEREFORE, BE IT RESOLVED, that the Term Sheet and all transactions contemplated thereby, are hereby in all respects approved, adopted, ratified and confirmed and that until such time as the Restructuring Committee shall modify this grant of authority, the Authorized Officers be, and hereby are, authorized and empowered, for and in the name of the Company and Subsidiaries and without joinder of any other person or entity, to effect the transactions contemplated by the Term Sheet and any transactions contemplated thereby, it being the intent of the Board that the Restructuring Committee shall modify or rescind this grant in the event a transaction or different terms arise from the Company's continued restructuring efforts or otherwise such that it would be in the best interests of the Company and its stakeholders to modify or abandon the plan of reorganization contemplated by the Term Sheet.

## Restructuring Committee

WHEREAS, the Board of Directors of the Company deems it appropriate to establish a special committee of directors (the "Restructuring Committee") to review, consider, evaluate, and, to the extent permitted in these resolutions, possibly take action with respect to all matters arising in connection with or relating to the Chapter 11 Case, the DIP Agreement and the Term Sheet (taken all together "Restructuring Issues"), which Restructuring Issues may include, but not be limited to, possible alternatives to the proposed plan of reorganization as contemplated by the Term Sheet where such alternatives would, in the opinion of the Restructuring Committee, realize a greater value for the Company's stakeholders;

NOW, THEREFORE, BE IT RESOLVED, that, pursuant to Section 48-18-206 of the Tennessee Code Annotated ("Section 206") and the Company's Amended and Restated Bylaws, the Board of Directors hereby creates the Restructuring Committee; and further

RESOLVED, that the Board of Directors hereby appoints Haag Sherman, Bob Gower, Gerald Hannahs and Carl Giesler to serve as members of the Restructuring Committee, each such member to serve for so long as the Restructuring Committee shall exist or until such member's resignation, if earlier; and further

RESOLVED, that the Board of Directors hereby appoints Haag Sherman to serve as the chairman of the Restructuring Committee; and further

RESOLVED, that, in accordance with Section 206 and the Company's Amended and Restated Bylaws, the Restructuring Committee may exercise, and shall have the authority to exercise the rights and full powers of the Board of Directors to take any and all actions with respect to all Restructuring Issues that the Restructuring Committee determines to be necessary or advisable, including but not limited to the following:

      a.      To formulate, establish, oversee, and direct all matters relating to the Chapter 11 Case, including, but not limited to, the implementation, documentation or other matters arising in connection with the DIP Agreement and the plan of reorganization contemplated by the Term Sheet;

      b.      To formulate, establish, oversee, and direct a process for the identification, evaluation, and negotiation of any potential alternative recapitalization or restructuring of the Company and any potential debt restructuring, stock issuance, merger, asset sale or other recapitalization of the Company that the Restructuring Committee may determine to be necessary or advisable in the best interest of the Company's stakeholders;

      c.      To evaluate and negotiate the terms of any proposed definitive agreements in respect of a potential recapitalization or restructuring of the Company, specifically including those required in connection with the DIP Agreement and the plan of reorganization contemplated by the Term Sheet and any alternative debt restructuring, stock issuance, merger, asset sale, or other recapitalization of the Company that the Restructuring Committee may determine to be necessary or advisable in the best interest of the Company's stakeholders;

      d.      To make recommendations to the Board of Directors in connection with any of the foregoing, including with respect to the DIP Agreement and the plan of reorganization contemplated by the Term Sheet and any alternative debt restructuring, stock issuance, merger, asset sale, or other recapitalization of the Company that the Restructuring Committee may determine to be necessary or advisable in the best interest of the Company's stakeholders, including without limitation that the Board of Directors: (i) approve any definitive agreement, plan of merger, plan of recapitalization or other potential sale of the Company or of assets

of the Company, (ii) recommend to the Shareholders of the Company that they approve or reject any definitive agreement, plan of merger, plan of recapitalization or other potential sale of the Company or of assets of the Corporation, and (iii) take any other actions and consider any other matters that the Restructuring Committee deems necessary or appropriate with respect to any of the foregoing;

   e. To take any and all actions and to do or cause to be done any or all things that the Restructuring Committee determines to be necessary or advisable with respect to any of the foregoing, with the same effect as if the Board of Directors had taken such action or done or caused such things to be done; and further

RESOLVED, that, notwithstanding the foregoing, the Restructuring Committee shall not have authority to approve or propose to shareholders action that the Tennessee Business Corporation Act requires be approved by shareholders, approve a plan of merger requiring shareholder approval, or take any other action that the Restructuring Committee is not permitted to take pursuant to the Tennessee Business Corporation Act; and further

RESOLVED, that, so long as the Restructuring Committee shall continue to exist, the Company shall not approve any alternative plan of reorganization other than the one contemplated by the Term Sheet, in the absence of a prior favorable recommendation of such action by the Restructuring Committee; and further

RESOLVED, that the Restructuring Committee is authorized to select and engage one or more independent legal counsel to represent and advise the Restructuring Committee to otherwise assist the Restructuring Committee in carrying out its responsibilities as provided in these resolutions provided that, for all purposes, communications between the Restructuring Committee and its other advisors, on the one hand, and any such legal counsel, on the other hand, shall be deemed within the scope of the Company's attorney-client privilege; and further

RESOLVED, that the Restructuring Committee is authorized to select and engage such other consultants, advisors, and agents, including without limitation investment bankers, financial advisors, and accountants, as the Restructuring Committee deems necessary or advisable in connection with fulfilling its responsibilities as provided in these resolutions and to perform such other services and deliver such opinions as the Restructuring Committee shall in its discretion request; and further

RESOLVED, that the Restructuring Committee is authorized to enter into such engagement agreements and other contracts as the Restructuring Committee deems necessary or advisable with respect to the retention, compensation, and indemnification of such counsel, consultants, advisors, agents, bankers, and accountants; and further

RESOLVED, that, that the Company is authorized to pay, and shall pay, all fees, expenses, and disbursements of such counsel, consultants, advisors, agents, bankers and accountants; that the Company is authorized to perform, and shall perform, all

undertakings, including undertakings to indemnify, and other agreements of the Company pursuant to any such engagement agreement or other contract; and that the officers of the Company are hereby authorized and directed to execute and deliver, in the name and on behalf of the Company, any such engagement agreement or other contract; and further

RESOLVED, that the officers of the Company are authorized and directed to assist the Restructuring Committee and provide to the Restructuring Committee, each member thereof, and any such counsel, consultant, advisor, agent, banker or accountant, and their designees, such information and materials, including the books, records, projections, forecasts, and financial statements of the Company and any documents, reports or studies obtained or prepared in connection with the Restructuring Issues, all to the extent requested by the Restructuring Committee; and further

RESOLVED, that the Board of Directors hereby determines that service by directors as members of the Restructuring Committee shall constitute service by a director of the Company for purposes of determining whether such director is entitled to indemnification and advancement of expenses pursuant to the Tennessee Business Corporation Act and the Company's Amended and Restated Bylaws, and further that the Company shall indemnify each director who is a member of the Restructuring Committee, to the fullest extent permitted by law, in accordance with the Company's Amended and Restated Bylaws, with respect to any matter arising from or related to the Restructuring Committee; and further

RESOLVED, that the officers of the Company are hereby directed to pass such resolutions or to take such other corporate or managerial actions as may be required to ensure that all actions undertaken by the Restructuring Committee in respect of any Subsidiary and in connection with any Restructuring Issues shall be binding upon each of the Subsidiaries;

RESOLVED, that the officers of the Company are authorized to take all such actions and to perform any and all acts (including execution, filing, and delivery of any and all instruments and documents) that they deem necessary or appropriate to effectuate the purpose and intent of the these resolutions.

## Continued Restructuring Efforts

WHEREAS, the Company has hired Seaport Global Securities, LLC ("SGS") to act as advisor with respect to its efforts to restructure its debts, sell certain of its assets and its capital repositioning efforts generally (the "Restructuring Efforts"), both before any Chapter 11 Case is instituted and thereafter;

WHEREAS, the Company and SGS have engaged in discussions with numerous parties in connection with those Restructuring Efforts, none of which to date have yielded a complete solution to the needs of the Company that would be addressed by the Plan and the DIP Agreement;

WHEREAS, the Board of Directors is committed to exhausting any and all opportunities reasonably calculated to maximize the value of the Company for the benefit of its stakeholders, including opportunities that might involve abandoning the Company's efforts to confirm the proposed Plan of the Second Lien Lenders in favor of alternative proposals;

NOW, THEREFORE, BE IT RESOLVED, THAT, the Board hereby directs that the Company and SGS each continue to solicit and engage in (or re-engage in) negotiations in furtherance of the Restructuring Efforts as may be required to determine on what terms reasonable alternative proposals for restructuring, asset sales or refinancing transactions with the Company may be had and to present the Restructuring Committee with each such proposal, to the extent material, so that the Restructuring Committee may compare such proposals to determine whether agreeing to any one or more of such proposals is in the best interests of the stakeholders of the Company.

**Miscellaneous**

RESOLVED, that the officers of the Company be, and hereby are, authorized and empowered, for and in the name and on behalf of the Company, to take or cause to be taken any and all such incidental actions, make such filings or execute and deliver any and all such acknowledgments, agreements, amendments, certificates, contracts, instruments, notices, statements and other documents as such officers may deem necessary, appropriate or advisable to carry out the intent of the foregoing resolutions.

I hereby certify that the above-written resolution was adopted by the Board of Directors of Miller Energy Resources, Inc., a Tennessee corporation as of the date first written above.

Jessica L. Cumbee
Associate General Counsel and Corporate Secretary of Miller Energy Resources, Inc.